UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY LUTTRELL, JR.<br><br>Petitioner,<br><br>v.<br><br>CONNIE GIPSON, Warden<br><br>Respondent. | No. 2:13-cv-0476 TLN GGH P<br><br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on September 24, 2012 in the Sacramento County Superior Court on charges of lewd and lascivious acts on two minors (Cal. Penal Code § 288(a), (b)(1), and § 288.5(a)).  He seeks federal habeas relief on the following grounds: (1) petitioner's right to confront witnesses and to a fair trial under the Sixth and Fourteenth Amendments were violated through the court's admission of a hearsay claim by one of the victims; (2) the conviction was obtained by a violation of the due process clause through instructions pursuant to CALCRIM numbers 1190 and 1193; and (3) petitioner's right to confront witnesses and to a fair trial under the Sixth and Fourteenth Amendments were violated because the errors were cumulatively prejudicial.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

1

# I. BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Andy Lauderdale Luttrell, Jr., sexually assaulted two of his stepchildren, K.H. and A.H., on multiple occasions. He was convicted by jury of three counts of committing a lewd or lascivious act upon a child under the age of 14 years (Pen. Code [footnote omitted], § 288, subd. (a)) (Counts 3, 4, and 6), two counts of committing such an act by use of force, violence, duress, menace, or fear of immediate bodily injury (§ 288, subd. (b)(1)) (Counts 1 and 2), and one count of continuous sexual abuse of a child (§ 288.5, subd. (a)) (Count 5). The jury also found that these crimes were committed against more than one victim within the meaning of the "One Strike Law." (Former § 667.61, subd. (e)(5).) [footnote omitted] The trial court sentenced defendant to five consecutive terms of 15 years to life and imposed other orders.
>
> …
>
> *Incidents on Treeleaf Way (Counts 1–4 & 6)*
>
> In March 1999, K.H. and A.H. moved into a house on Treeleaf Way in Citrus Heights with their mother, D.L., and their stepfather, defendant. At the time of the move, K.H. was almost three years old and A.H. was four years old.
>
> K.H.'s first memory of being sexually assaulted by defendant was when she was three years old. K.H. and A.H. were playing in an inflatable swimming pool in the back yard when defendant called them into the house to take a nap. A.H. and K.H. went to their separate bedrooms to do so. Before K.H. fell asleep, defendant entered her room and told her to follow him to his bedroom. She obeyed. Once inside, defendant locked the door and told her to take off her swimsuit. She again obeyed. Defendant then took off his shorts, picked up K.H., placed her on top of him on the bed, and inserted his penis in her vagina. K.H. cried out in pain and yelled: "Stop. It hurts."
>
> At this point, A.H. came to the door and knocked several times, saying: "Let me in, let me in." K.H. continued to cry. Defendant told A.H. that he could not come into the room, withdrew his penis from K.H.'s vagina, and sat her on the bed next to him. K.H. took this opportunity to retreat to the master bathroom. She urinated, "but it hurt." When she came out of the bathroom, defendant was lying on the floor between the bed and a dresser. He told her to come over to him, again placed her on top of him, and again inserted his penis in her vagina. K.H. cried while A.H. continued knocking on the door. At some point, defendant ended his assault on his three–year–old stepdaughter, allowed her to put her swimsuit back on, and threatened to "hurt" her if she told

anyone about what happened. Defendant got dressed, opened the door, and allowed K.H. and A.H. to continue playing in the pool.

About a month later, K.H. and A.H. were playing in the pool when defendant called them both into his bedroom. In the room, defendant told A.H. to take off his swim shorts. A.H. obeyed. While defendant and A.H. were sitting on the bed, defendant started "pulling on" his stepson's penis with his hand. He then told K.H., who was also on the bed, to do the same. She also obeyed. After some time, A.H. put his shorts back on and defendant took them both to get ice cream.

*Incidents on Winlock Avenue (Count 5)*

In November 2001, the family moved in with defendant's parents on Winlock Avenue, also in Citrus Heights. By this time, D.L. had given birth to defendant's daughter, K.L. They then moved into another house on Treeleaf Way in March 2002. In November 2002, the family moved back in with defendant's parents.

When K.H. was "six or seven" years old, defendant came into her room on an "almost nightly" basis for about three months. During these visits, defendant pulled his penis out of his pajama shorts. K.H. "pulled on his penis because that's what [she saw] him do to [her] brother, so that's what [she] thought [he wanted]." While K.H. did not know how many times this happened, she testified that it was more than three times. On another occasion, while defendant and K.H. were alone in the garage, defendant "started rubbing [her] leg and [her] vagina area with [her] clothes on." His hand was beneath her shorts, but on top of her underwear. Defendant stopped when D.L. came home and told K.H.: "Don't tell your mom about this."

In November 2003, D.L.'s other children, Ka., Ki., and Ke. moved in with the family. When they arrived, defendant's sexual abuse of K.H. ended.

*The Abuse Comes to Light*

In April 2009, A.H., who was then 14 years old and staying with a friend of the family in Fremont, sent his older sister, Ka., a series of text messages reporting that defendant had done some "sexual stuff" to him and K.H. when they were younger. A.H. also sent his mother a series of text messages while she was at work stating that he wanted to talk to her about defendant. When D.L. got home from work, she called her son, but was not able to speak to him. Instead, she spoke to the family friend with whom he was staying. D.L. then confronted defendant about the abuse. Defendant responded: "I knew they would find a way to split us up."

Two days later, D.L. picked up K.H. from a friend's house and asked whether defendant had ever touched her inappropriately. K.H. began to cry and said that he had done so. D.L. told K.H. to pack a bag because she and her sisters would be staying at a friend's house while D.L. handled the situation. While the children packed

3

their bags, defendant asked D.L. what was wrong and said: "Well, by the look on your face, it looks like you found out more information." D.L. answered that K.H. told her about the abuse, that she was taking the children out of the house, and that defendant "needed to call the cops or [she] was going to." By the time D.L. returned from dropping off the children, defendant had called the police.

*Defendant's Statement to Police*

Defendant was arrested and taken to the police station for questioning. Defendant began by stating that he did not "recall anything that would've taken place" and had "no memory" of sexually abusing his children. One of the detectives asked: "Is it that it, it didn't happen or is it that you just don't remember that it happened?" Defendant answered: "Well, I would like to hope it never did." Defendant also stated that he did not remember any of the alleged incidents "visually in [his] mind." When detectives confronted defendant with the specific incident in which he sexually assaulted K.H. in his bedroom while A.H. knocked on the door, defendant responded: "That just don't seem like me." Later in the interview, defendant admitted some of the abuse, but mitigated the severity of his crimes. For example, when defendant was asked whether he allowed K.H. to touch his penis while they lived at his parent's house, he responded: "I guess so. I mean if all these stories are coming out I guess I must have." One of the detectives then asked how many times this happened. Defendant responded: "A couple times, if that." He then estimated that it happened "[t]wo or three" times, and that it was a "freak thing" that "only happened every so–often." Defendant also admitted that there was an incident in which K.H. fondled A.H., but stated that this was just "them being young" and "touchy feely."

(Answer, Ex. A; People v. Luttrell, 2012 WL 1870217, at *1-3.)

On May 23, 2012, the California Court of Appeal, Third Appellate District, affirmed the judgment, but remanded for resentencing on count 5. (Id. at *7.) The California Supreme Court denied review. (Res't's Lod. Doc. 8.) On remand, the superior court resentenced petitioner on count 5 only. (Id., Doc. 9.)

II. DISCUSSION

A. AEDPA Standard of Review

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

/////

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was

unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S. Ct. at 365. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

If the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

B. Admission of Hearsay Statements

Petitioner first claims that the testimony of A.H.'s older sister, Ms. N., that she received a text message from A.H. to the effect that petitioner had sexually molested him, violated petitioner's confrontation right under the Sixth Amendment right because A.H. did not testify at trial and therefore could not be cross-examined. He further claims that it violated his due process rights in rendering the trial fundamentally unfair. The prosecutor used this testimony to argue to the jury that the victim disclosed to his older sister "that he had been molested by the defendant when he was little." (ECF No. 1 at 8.)

Respondent argues that this claim is procedurally barred and that the Sixth Amendment right to confrontation only attaches to testimonial statements.

/////

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 81–82, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977). However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the default issue turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524–25, 117 S. Ct. 1517, 137 L.Ed.2d 771 (1997); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir.2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same"); Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here, this court finds that petitioner's Sixth Amendment confrontation claim can be resolved more easily by addressing it on the merits. Accordingly, this court will assume for these purposes that petitioner's claim is not procedurally defaulted.

The issue on the merits here initially involves the Confrontation Clause of the Sixth Amendment to the United States Constitution, and secondarily, a Fifth Amendment Due Process concern about the admission of unreliable, prejudicial evidence.

In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are "testimonial" in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. Crawford v. Washington, 541 U.S. 36, 68 (2004). This rule applies only to hearsay statements that are "testimonial" and does not bar the admission of non-testimonial hearsay statements. Id. at 42, 51, 68. See also Whorton v. Bockting, 549 U.S. 406, 420 (2007) ("the Confrontation Clause has no application to" an "out-of-court nontestimonial statement.") The statement made in this case by A.H. to his older sister was not testimonial. See Doan v. Carter, 548 F.3d 449, 458 (6th Cir. 2008) (victim's statements to friends and neighbors not testimonial under pre-Crawford standards); United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (statements made by declarant to family members were not "testimonial" because they were "not the kind of memorialized, judicial-process-created evidence of which Crawford speaks"); Gonzales v. Clark, 2009 WL 3233906, *8 (C.D. Cal. Sept. 30, 2009) (petitioner's private statements to his aunt were not testimonial in nature). Accordingly, the

1   Confrontation Clause would seem to have no application here.

2       The treatment of non-testimonial hearsay after Crawford is subject to debate, however. Although the Ninth Circuit Court of Appeals has noted in at least one unpublished opinion that Crawford abrogated the Roberts test;[1] see Guerra v. Felker, 2010 WL 1936281, *2 n. 1 (9th Cir. May 14, 2010); other courts have concluded that Crawford specifically left open the question of whether prior cases might control non-testimonial hearsay evidence.  See Valdivia v. Schwarzenegger, 548 F.Supp.2d 852, 862 (E.D. Cal. 2008), citing Crawford, 541 U.S. at 68.

> But the [Crawford] Court expressly limited its holding to testimonial evidence, which, while not fully defined, included, at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations.  Crawford, 541 U.S. at 68, 124 S. Ct. 1354.  The Court left open the possibility that its earlier cases might still control as to other types of hearsay. Crawford, 541 U.S. at 68, 124 S. Ct. 1354. ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law- as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.") The Court expressly declined to say whether it would overrule [Idaho v.]White, one of the cases standing for the proposition that hearsay within a firmly rooted exception satisfies the Sixth Amendment Confrontation Clause.  Id. at 61, 124 S.Ct. 1354.
>
> …
>
> Thus, it is unsettled whether, and which, hearsay exceptions now provide guarantees of trustworthiness sufficient to satisfy the demands of the Confrontation Clause. United States v. Weiland, 420 F.3d 1062, 1076 (9th Cir2005) ("If the evidence is nontestimonial, there is uncertainty as to whether the 'indicia of reliability' or firmly rooted hearsay exception test enunciated in Ohio v. Roberts survives Crawford." [citations omitted] )

Valdivia, 548 F.Supp.2d at 862-63.  In noting that cases such as Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139 (1990)[2] have been called into question by Crawford, the district court in Valdivia assumed based on United States v. Comito, 177 F.3d 1166,1171 (9th Cir. 1999) and other Ninth

---

[1] Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531 (1980), overruled in part by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), (holding that hearsay evidence does not violate the Confrontation Clause if it is within a firmly rooted exception and contains "particularized guarantees of trustworthiness").

[2] Idaho v. Wright applied a totality of the circumstances test to out-of-court statements made by a non-testifying victim to determine their indicia of reliability and trustworthiness.  497 U.S. at 814-816, 818, 820-21.

Circuit cases, that the Ninth Circuit would not deem reliability alone as a sufficient basis for admission of hearsay evidence, but that a balancing test was appropriate. Id. at 865. In a later Valdivia case, the Ninth Circuit Court of Appeals specifically noted in this regard:

> However, the Confrontation Clause does not apply to the admission of nontestimonial hearsay. United States v. Sine, 493 F.3d 1021, 1035 n. 11 (9th Cir.2007) (citing Whorton v. Bockting, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (stating in dicta that, "[u]nder Crawford, ... the Confrontation Clause has no application to [nontestimonial] statements and therefore permits their admission even if they lack indicia of reliability")). Most hearsay exceptions cover statements that are, by their nature, not testimonial. Crawford, 541 U.S. at 56, 124 S.Ct. 1354.

Valdivia, 623 F.3d 849, 852 (9th Cir. 2010).

Petitioner argues that the fresh complaint doctrine, as outlined in People v. Brown, 8 Cal.4th 746, 35 Cal.Rptr.2d 407 (1994) (permitting evidence of a complaint made by a victim of a sexual offense), does not apply to this case because the issue at trial was the credibility of K.H., not A.H., who did not testify. (ECF No. 1 at 9.) To the extent that petitioner argues that the state court violated Cal. Penal Code § 1360[3] by admitting the victim's prior statements at trial,

---

[3] Section 1360, subdivision (a) reads:

> In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:
>
> (1) The statement is not otherwise admissible by statute or court rule.
>
> (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.
>
> (3) The child either:
>
> (A) Testifies at the proceedings.
>
> (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

The victim in this case, when the statement was made, was over the age of 12, and the complaint, i.e., the message, seems anything but "fresh."

1 petitioner is advised that federal habeas relief is not available for alleged error in the application
2 of state law. Wilson v. Corcoran, ___ U.S. ___, 131 S. Ct. 13 (2010). The decision of the
3 California Court of Appeal rejecting this state law claim is binding on this court and may not be
4 challenged in this federal habeas corpus proceeding. Waddington v. Sarausad, 555 U.S. 179, 192
5 n.5 (2009) ("we have repeatedly held that 'it is not the province of a federal habeas court to
6 reexamine state-court determinations on state-law questions'"); Rivera v. Illinois, 556 U.S. 148,
7 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v.
8 Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991));
9 Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds
10 a federal court sitting in federal habeas"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal
11 habeas corpus relief does not lie for errors of state law); Jammal v. Van de Kamp, 926 F.2d 918,
12 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary
13 nor a sufficient basis for granting habeas relief.").

14 In regard to petitioner's Confrontation Clause claim, the fresh complaint doctrine is not a
15 hearsay exception firmly rooted in the law. "Section 1360[, enacted in 1995] is too new to be
16 considered a firmly rooted hearsay exception because it does not reflect 'longstanding judicial
17 and legislative experience in assessing the trustworthiness' of the statements it covers; the statute
18 must therefore satisfy the 'particularized guarantees of trustworthiness' standard under the
19 Confrontation Clause." People v. Eccleston, 89 Cal.App.4th 436, 445, 107 Cal.Rptr.2d 440, 447
20 (2001).

21 Nevertheless, pursuant to Crawford, as cited by the Ninth Circuit in Valdivia, petitioner's
22 claim under the confrontation clause fails as the non-testimonial hearsay statement was properly
23 admitted into evidence at trial. Whether this statement violates the Due Process clause, as
24 petitioner also claims, is another question. Was the statement so lacking in indicia of reliability
25 such that its admission was fundamentally unfair and violated due process? Obviously, and
26 hypothetically, if the message at issue involved an accusation after the transmitting child had been
27 beaten until he was ready to send the "proper message," reasonable jurists would not have
28 difficulty in determining the text message was entirely unreliable. The fact that the message was

11

"non-testimonial" would be beside the point; it would simply be fundamentally unfair to allow such evidence into the trial.

Fortunately, there are no facts in this case which would match those of the hypothetical in their egregious nature. The hearsay statement at issue bears its own indicia of reliability based on the other evidence presented in the case. For example, although A.H. did not testify, K.H. did testify to both the sexual assault against herself by petitioner, and the sexual assault by petitioner against A.H. that she had witnessed, thereby proffering separate and independent evidence against petitioner. (RT. 121-27, 141-43.) Moreover, petitioner's statements to the police, recounted above, are damning admissions. Therefore, it was not fundamentally unfair to permit introduction of hearsay through Ms. N's testimony, and petitioner's due process rights were not violated in this regard.

Moreover, AEDPA would seem to tie the court's hands even if the evidence was very unreliable and prejudicial.

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." Musladin, 549 U.S. at 77, 127 S.Ct. 649.

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

For the reasons set forth above, petitioner is not entitled to federal habeas relief with respect to his challenge to the admission into evidence of A.H.'s statement to Ms. N. concerning inappropriate sexual conduct by petitioner.

C. Jury Instructions

Petitioner next claims that the court violated his due process rights by providing two erroneous instructions to the jury, CALCRIM numbers 1190 and 1193. Petitioner argues that these instructions invited the jury to find the prosecution witnesses more believable in contrast to the defense, thus leading the jury to convict him on a lesser showing than due process requires.

This court will not review the state court's rejection of petitioner's claim of jury instruction error on state law grounds (Answer, Ex. A), because a federal habeas relief is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, ___ U.S. ___,131 S. Ct. 13,16 (2010); Estelle, 502 U.S. at 67-68; Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); see also Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11, 95 S. Ct. 1881 (1975) (federal courts will not review an interpretation by a state court of its own laws unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution).

In order for the trial court's alleged erroneous instructions to warrant federal habeas relief, petitioner must demonstrate that he suffered a violation of due process. See Estelle, 502 U.S. at 72 ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'") (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L.Ed.2d 368 (1973). That is, in order for relief to issue, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned," ' but must violate some due process right guaranteed by the fourteenth amendment.'" Cupp, 414 U.S. at 146. See also Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir.1992). The Due Process Clause "safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.'" Rivera v. Illinois, 556 U.S. 148, 158, 129 S. Ct. 1446 (2009) (quoting Spencer v. Texas, 385 U.S. 554, 563-64, 87 S. Ct. 648 (1967)). The Supreme Court has defined 'very narrowly' the category of infractions that violate fundamental unfairness. Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668 (1990).

Furthermore, it should be noted that petitioner failed to object to both CALCRIM numbers 1190 and 1193 at trial. Luttrell, 2012 WL 1870217, at *5, 6. A party may not complain on appeal about the giving of an instruction correct in the law and responsive to the evidence unless the party objected to the instruction and/or requested clarifying or amplifying language. People v. Valdez, 32 Cal.4th 73, 113, 8 Cal.Rptr.3d 271 (2004).

/////

/////

1. CALCRIM 1190

CALCRIM 1190 reads, "conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." This instruction followed the trial court's instruction of CALCRIM number 301 which reads that the "testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

Petitioner argues that instruction number 1190 is a "pinpoint instruction on a topic covered by a neutral instruction," number 301.

The California Court of Appeal rejected petitioner's claim, relying on a California Supreme Court case which determined that CALCRIM No. 1190 was constitutional under state law. Luttrell, 2012 WL 1870217 at *5-6 (citing People v. Gammage, 2 Cal.4th 693, 700, 7 Cal.Rptr.2d 541 (1992)). The court noted that under Gammage, it was appropriate to give both instructions because even though they overlap to some extent, each one has a different focus.

> CALJIC No. 2.27 focuses on how the jury should evaluate a fact (or at least a fact required to be established by the prosecution) proved solely by the testimony of a single witness. It is given with other instructions advising the jury how to engage in the fact-finding process. CALJIC No. 10.60, on the other hand, declares a substantive rule of law, that the testimony of the complaining witness need not be corroborated. It is given with other instructions on the legal elements of the charged crimes.

Gammage, 2 Cal.4th at 700-01.[4]

Petitioner argues nevertheless that Gammage was decided in 1992 and that in 2010 and 2011 when this case was tried, it was no longer necessary to have to instruct jurors of the no-corroboration-required rule, as current jurors would not be under "long-since-discredited archaic ideas about inherent suspicion surrounding rape charges" "as being easily made." (ECF No. 1 at 14-15.) This argument has been rejected:

> [W]e are unwilling to adopt [Petitioner's] unsupported assertion that Gammage must be revisited because modern jurors can be expected to know that corroboration of a rape victim's testimony is

---

[4] CALJIC number 2.27 discussed in Gammage is the equivalent of the current CALCRIM number 301. CALJIC number 10.60 is the equivalent of CALCRIM number 1190.

> not required. In our collective legal and judicial experience, many lay jurors continue to believe generally that a witness's testimony alone is not actual "proof," and independent corroboration, usually of a physical nature, is needed to "prove" guilt. We are unpersuaded that the concern of the court in Gammage that jurors might still believe a rape victim's testimony is not sufficient proof to convict has significantly changed over the 18 years since the decision was issued.

Alvarez v. Trimble, 2012 WL 439406, at *4 (E.D. Cal. Feb. 9, 2012).

As to petitioner's argument that these instructions improperly lightened the prosecutor's burden of proof, Gammage specifically spoke to that argument by pronouncing: "[n]or do the instructions 'dilute[] the 'beyond a reasonable doubt' standard.' [citation omitted.] The instructions in combination are no less correct, and no less fair to both sides, than either is individually." Gammage, 2 Cal.4th at 701. Petitioner has provided no evidence that the jurors followed these instructions in a manner that reduced the prosecution's burden of proof or that they did not follow the instruction regarding proof beyond a reasonable doubt. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727 (2000) (noting that jurors are presumed to have followed the instructions provided). Therefore, not only has the California Supreme Court found that it is proper to give both instructions in combination in cases involving sex offenses, Gammage, supra, but it has also ruled that the trial court is required to give instructions on the "one witness" standard in all cases, not just those involving sexual crimes. People v. Rincon-Pineda, 14 Cal.3d 864, 884-85, 123 Cal.Rptr. 119 (1975). In sum, there is no reason to find that the prosecution's burden of proof was misapplied, and the giving of CALCRIM 1190 and 301 cannot be said to have "so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147.

### 2. CALCRIM 1193

CALCRIM 1193 was given to the jury as follows:

> You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodations syndrome.
>
> Dr. Anthony Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.

> You may consider this evidence only in deciding whether or not Kristen H./Aaron H.'s conduct was not inconsistent with the conduct of someone who has been molested, **and in evaluating the believability of testimony**.

(CT 220.) (emphasis added.) Petitioner objects to the highlighted portion of the instruction, arguing that this language "affirmatively invites the jury to apply the expert's testimony case-specifically to evaluate the believab[ility] of certain named witnesses who testify at trial." Petitioner points out that CALJIC number 10.64, the comparable pattern instruction, contains no language similar to the highlighted language here.

The California Court of Appeals outlined a series of cases on the issue of expert testimony regarding the behavior of rape victims, all of which permitted such testimony, not to prove that sexual abuse had in fact occurred, but "to rebut misconceptions about the presumed behavior of rape victims," and to rehabilitate the credibility of these victim witnesses, especially when their behavior is inconsistent with their testimony claiming molestations, such as a delay in reporting abuse or to explain recantation of a molestation claim. Luttrell, 2012 WL 1870217, at *6 (citing People v. Bledsoe, 36 Cal.3d 236 (1984); People v. Bowker, 203 Cal.App.3d 385, 394 (1988) (delay in reporting abuse); People v. Housley, 6 Cal.App.4th 947, 955-56 (1992) (recantation of molestation claim)). The court concluded there was no error based on precedent permitting such expert testimony. Even though petitioner in this case challenged on appeal the instruction permitting consideration of the believability of victim witnesses, the court found that the instruction properly permitted the jury to use expert testimony in determining the credibility of witnesses. Id. at *7.

Child sexual abuse accommodation syndrome ("CSAAS") evidence is admissible for certain purposes under both state and federal law. Perez v. Allison, 2013 WL 1435198 (N.D. Cal. Apr. 9, 2013). In fact, the Ninth Circuit has found that use of such evidence does not necessarily offend due process. Id. at *6, n. 2, citing Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003). This is so because such evidence is used, not to prove the truth of the victim's testimony that a defendant molested her, but rather where it concerns general characteristics of the victim, such as

/////

reviving the victim's credibility where she had provided inconsistent accounts of the molestation. Id.

Here, CALCRIM 1193 was a limiting instruction, and specifically informed the jury that they were only to consider the evidence in terms of the witness' believability. Furthermore, according to the appellate court opinion, Dr. Urquiza's testimony was that CSAAS was "not a diagnostic tool," and that it would be inappropriate to find that if all five factors are met, the victim was abused, or similarly that if not all factors are met, then the victim was not abused. Luttrell, 2012 WL 1870217, at *6. This expert also testified "that he did not know about the facts of this case and had no opinion as to whether sexual abuse occurred, stating: "[t]hat's the responsibility of the jury." Id.

The petitioner in Ramirez v. Cash, 2011 WL 1883823 at *4 (E.D. Cal. May 16, 2011), made the same argument petitioner makes here, that this instruction had the effect of directly endorsing the victims' testimony and bolstering the credibility of such witnesses, thereby lessening the prosecution's burden. There, the district court agreed with the state court of appeals in finding that under California law, CSAAS testimony is admissible to rehabilitate a victim's testimony but not to prove molestation occurred. Id. at *6. In this case, the court instructed the jury, as in Ramirez, that the expert's CSAAS testimony was "not evidence that the defendant committed any of the crimes charged against him." (Res't's Lod. Doc. 1 at 220.) The jury was further instructed that the only permissible purpose of this evidence was for determining the credibility of the victim witnesses. (Id.) Additionally, the court instructed the jury more than once how to evaluate the credibility of witnesses and that the testimony of each witness must be evaluated by the same standards. (Id. at 208, 214.) Furthermore, the jury here was instructed (more than once) that petitioner was presumed innocent and that the prosecution carried the burden to prove his guilt beyond a reasonable doubt. (Id. at 205, 207, 212.) All of these instructions were the same as those given to the jury in Ramirez.

As with CALCRIM 1190, this court finds that CALCRIM 1193 cannot be said to have "so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. Petitioner has not shown any likelihood, let alone a "reasonable likelihood" that the jury

1   misapplied this instruction.  Estelle, 502 U.S. at 72.

2        D.  Cumulative Prejudice

3        Petitioner claims that the cumulative effect of the various errors committed at his trial, described in the claims set forth above, violated his right to due process and a fair trial. (ECF No. 1 at 28.)  The California Court of Appeal rejected this argument, finding "no single instance of error, prejudicial or otherwise."  Luttrell, 2012 WL 1870217 at *7.

     The Ninth Circuit has concluded that under clearly established federal law, the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir.2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290, 93 S. Ct. 1038, 35 L.Ed.2d 297 (1973)). See also Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no cumulative prejudice is possible").  "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 623).

     This court has addressed each of petitioner's claims individually and has concluded that no error of constitutional magnitude occurred at his trial in state court.  This court also concludes that the errors alleged by petitioner, even when considered together, did not render his defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict."  Parle, 505 F.3d at 927.  Accordingly, petitioner is not entitled to federal habeas relief on his claim of cumulative error.

     Based on the state court record in this case, AEDPA requires the undersigned to uphold the state court determinations as they were not AEDPA unreasonable.

III.  CONCLUSION

     For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

      Accordingly, IT IS HEREBY RECOMMENDED that:

      1. Petitioner's application for a writ of habeas corpus be denied; and

      2. The District Court decline to issue a certificate of appealability.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 3, 2014

       /s/ Gregory G. Hollows
     GREGORY G. HOLLOWS
  UNITED STATES MAGISTRATE JUDGE

GGH:076/Luttrell0476.hc